UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| In re application for Precise Prospective Cell Phone Location Information Government's File No. 20-027-04 | 4:20-mj-00023-VLD-1 |

## INTRODUCTION

The United States of America ("government") presented this magistrate judge with an application for a search warrant request that requires Cellco dba Verizon Wireless to give the government real-time prospective precise location information (PLI) for a cellular phone for a period of 30 days.

## FACTS

This affidavit concerns an ongoing drug trafficking investigation emanating from Iowa and including the District of South Dakota. The affidavit in support of the request for the warrant details drug trafficking activity occurring in South Dakota, Minnesota and Iowa.

The affidavit contains information about the target telephone ("TT") and its owner. The TT has a non-South Dakota area code and the only location the affidavit places the TT is in Iowa. There are no facts indicating the TT or its owner has ever set foot in South Dakota, although there is evidence that the TT's owner may visit South Dakota in the near future in connection with a drug

delivery. The sole legal authority cited by the government in support of its search warrant is 18 U.S.C. § 2703(c)(1)(A).

Previously, the government presented this magistrate judge with a very similar search warrant for PLI for a cell phone with an out-of-state area code under facts which never demonstrated the TT or its owner had ever entered South Dakota. See 4:19-mj-63, Docket No. 1 (D.S.D. Aug. 19, 2019). This court denied the request for the warrant, issuing a written opinion explaining why. Id. at Docket No. 2. The government appealed this decision to the district court, which overruled this court and issued the warrant. Id. at Docket Nos. 6 & 7.

This court, as it must, feels bound by the law established by the district court in this earlier case. However, because this court still has serious reservations regarding the legal basis for the warrant in this case, the court issues this opinion explaining those reservations.

## DISCUSSION

**A.   Section 2703, Title 18 United States Code**

   **1.   Statutory Text and Definitions**

Because § 2703(c)(1)(A) is the sole basis relied upon by the government for its warrant request, the court reproduces that statute in pertinent part herein, with pertinent terms defined in the footnotes below.

2

## § 2703. Required disclosure of customer communications or records

**(a) Contents of wire or electronic communications in electronic storage.**--A governmental entity may require the disclosure by a provider of electronic communication service[1] of the contents of a wire or electronic communication[2], that is in electronic storage[3] in an electronic communications system[4] for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction.[5] A governmental entity may require the disclosure by a provider

---

[1] An "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications. See 18 U.S.C. § 2510(15). The definitions section of the Stored Communications Act, of which § 2703 is a part, incorporates by reference all definitions found at 18 U.S.C. § 2510. See 18 U.S.C. § 2711(1).

[2] An "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photooptical system that affects interstate or foreign commerce, but ***does not include*** (A) any wire or oral communication; (B) any communication made through a tone-only paging device; ***(C) any communication from a tracking device (as defined in section 3117 of this title);*** or (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;" See 18 USC 2510(12) (highlighting added).

[3] "Electronic storage" includes "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" as well as "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." See 18 U.S.C. § 2510(17).

[4] An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." See 18 U.S.C. § 2510(15).

[5] A "court of competent jurisdiction" is "any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that—has jurisdiction over the offense being investigated" or "is in . . . a district in which the provider of a wire or electronic communication service is

3

of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

**(b) Contents of wire or electronic communications in a remote computing service.—**

    **(1)** A governmental entity may require a provider of remote computing service[6] to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—

        **(A)** without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction; or

        **(B)** with prior notice from the governmental entity to the subscriber or customer if the governmental entity—

            **(i)** uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena; or

            **(ii)** obtains a court order for such disclosure under subsection (d) of this section;

        except that delayed notice may be given pursuant to section 2705 of this title.

    **(2)** Paragraph (1) is applicable with respect to any wire or electronic

---

located or in which the wire or electronic communications, records, or other information is stored." See 18 U.S.C. 2711(3).

[6] A "remote computing service" is "the provision to the public of computer storage or processing services by means of an electronic communications system." See 18 U.S.C. § 2711(2).

communication that is held or maintained on that service—

**(A)** on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

**(B)** solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

**(c) Records concerning electronic communication service or remote computing service.-**

**(1)** A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

**(A)** obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction;

**(B)** obtains a court order for such disclosure under subsection (d) of this section;

**(C)** has the consent of the subscriber or customer to such disclosure;

**(D)** submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing (as such term is defined in section 2325 of this title); or

5

**(E)** seeks information under paragraph (2).

**(2)** A provider of electronic communication service or remote computing service shall disclose to a governmental entity the—

**(A)** name;

**(B)** address;

**(C)** local and long distance telephone connection records, or records of session times and durations;

**(D)** length of service (including start date) and types of service utilized;

**(E)** telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

**(F)** means and source of payment for such service (including any credit card or bank account number),

of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

**(3)** A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer.

**(d) Requirements for court order.**--A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

### 2. Section 2703(c) Does Not Authorize PLI from Cell Phones

The first thing of note when interpreting § 2703 is that it was initially passed in 1986 as part of the Stored Communications Act. The definitions of "electronic service provider," "remote computing service," and "electronic communication" have never been substantially updated since 1986. In 1986, Congress was primarily concerned with stored email. Cellular phones, to the extent they existed at that time, were not the "smart phones" we know today. They did not have the capability of yielding precise location information (PLI). Therefore, when interpreting a statute that has not kept pace with technology, some common sense is called for.

As the government's affidavit makes clear, modern cell phones can generate at least two kinds of information about the location of a cell phone. See Docket No. 1-1 at p. 10, ¶¶55-56. They can generate cell-site data, also known as "tower/face information" or cell tower/sector record. This is somewhat imprecise in that it identifies only which cell tower a cell phone is connected to and the towers can be up to one-half mile apart in urban areas and up to 10 miles apart in rural areas. Id. Therefore, identifying the tower closest to a cell phone only gives a general sense of the location of the cell phone within a range. Id. That is not the data requested by the government in this search warrant. Id. at Attachment B.

Instead, the government seeks "E-911 Phase II data," also known as GPS or latitude-longitude data. Id. This data can locate the position of a cell phone rather exactly. Id. at p. 10, ¶¶55-56.

7

The first thing to note is that the Stored Communications Act never mentions location information as data available to the government under § 2703. Instead, the statute tells the government it may obtain "a record or other information pertaining to a subscriber to or customer of" an "electronic communication service" or "remote computing service." See 18 U.S.C. § 2703(c)(1). The definitions accompanying the Stored Communications Act tell us that "electronic communication services" and "remote computing services" provide to their customers the means to engage in "electronic communications." See 18 U.S.C. §§ 2510(15) and 2711(2). Congress has defined "electronic communications" so as to *exclude* from that definition "any communication from a tracking device (as defined in section 3117 of this title)." See 18 U.S.C. § 2510(12).

Section 3117 defines "tracking device" as "an electronic . . . device which permits the tracking of the movement of a person or object." See 18 U.S.C. § 3117(b). This court previously expressed its conclusion, rejected by the district court in 4:19-mj-63, that when prospective PLI is obtained from a cellular phone with GPS capabilities as in the search warrant at issue, it is "an electronic device which permits the tracking of the movement" of the phone and the person in possession of the phone. The significance of this conclusion is that signals from tracking devices—or PLI-enabled cell phones, in this court's opinion—were specifically *excluded* by Congress from among the data the government is allowed to obtain under § 2703. This conclusion not only solidly

rests on the text and the context of the Stored Communications Act[7], it is buttressed by examining other similar statutes concerning the government's ability to pry electronically into a suspect's activities.

Any time Congress has authorized law enforcement to obtain *prospective* electronic surveillance of a suspect—such as in the pen register/trap & trace statutes, the tracking device statute, or the wiretap statute—Congress has (1) imposed a time limit for the gathering of prospective information and (2) provided for judicial oversight of the ongoing collection of prospective information. See United States v. Espudo, 954 F. Supp. 2d 1029, 1035-37 (S.D. Cal. 2013) (citing In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority, 396 F. Supp. 2d 747 (S.D. Tex. 2005)). Section 2703 contains *no time limits* and *no continuing judicial oversight.* See 18 U.S.C. § 2703.

The only time limits contained in § 2703 are *retrospective.* Subsection (a) of § 2703 authorizes the government to obtain the "contents" of an "electronic communication" from an "electronic communication service" provider via a search warrant issued according to the procedures set forth in the Federal Rules of Criminal Procedure. See 18 U.S.C. § 2703(a). This provision applies to contents of electronic communications that have been stored for less than 180 days; if the communication has been stored for longer

---

[7] PLI is given to the government as quickly as the cellular service provider receives it under the warrant, so it cannot under any stretch of the definition of the word "stored" be considered "stored" data. Even the name of the Act of which § 2703 is a part indicates it does not encompass prospective PLI data.

than 180 days, subsection (b) of § 2703 applies. Id. The only time limits in § 2703 apply to historical, not prospective, information.

By contrast, in the wiretap statute, Congress limited the government's power of prospective information-gathering to 30 days. See 18 U.S.C. § 2518(5). Pen/trap orders are limited to 60 days. See 18 U.S.C. § 3123(c)(1). Both wiretaps and pen/trap orders may be extended by the court for limited periods of time. 18 U.S.C. §§ 2518(5), 3123(c)(2). Wiretaps require periodic reports to the court concerning the progress of surveillance. 18 U.S.C. § 2518(6). Similarly, tracking device warrants are limited to 45 days initially, subject to extension upon judicial approval. See FED. R. CRIM. P. 41(e)(2)(C). There is no similar provision under § 2703 for either a time limit or judicial oversight.

Both of these omissions (time limits and judicial oversight) are powerful evidence that Congress did not intend to authorize the government to obtain prospective PLI from cell phones under § 2703. This, in addition to the fact the text of the Stored Communications Act specifically suggests that obtaining prospective location information is prohibited (see § 2510(12)), leads this court to conclude that prospective PLI from cell phones is not available under § 2703.

**B.   The Government is Allowed to Obtain PLI from Cell Phones Under 18 U.S.C. § 3117**

The above analysis does not result in the conclusion that the government is simply unable to take advantage of the PLI capabilities of modern smart cell phones in its investigations. But it must do so, in this court's opinion, under the tracking device statute, 18 U.S.C. § 3117. Again, the definition of a

10

tracking device is "an electronic or mechanical device which permits the tracking of the movement of a person or object." See 18 U.S.C. § 3117(b). A cell phone is an "electronic . . . device" which allows the tracking of an "object"—namely, itself. A court may issue a warrant for a tracking device if the device is used within the jurisdiction of the court, "and outside the jurisdiction [of the court] if the device is installed in that jurisdiction." Id. at (a). The tracking device statute, like § 2703, was enacted in 1986. It has never been amended since it was first enacted by Congress.

Federal Rule of Criminal Procedure 41 also addresses tracking devices. A magistrate judge within a district has the authority to issue a tracking device warrant that authorizes the use of the device "within the district, outside the district, or both." See FED. R. CRIM. P. 41(b)(4). A tracking device warrant must be limited to a reasonable length of time not to exceed 45 days from the date of issuance, although the court may grant extensions for a reasonable period not to exceed 45 days each. See FED. R. CRIM. P. 41(e)(2)(C). "Any" installation required of a tracking device must be completed within a specified time, not longer than 10 days after the warrant was issued. Id.

Construing the government's application herein as a request for a tracking device is congruent with recent Supreme Court cases and Eighth Circuit cases. The Supreme Court has held that tracking devices require a search warrant issued upon probable cause. United States v. Jones, 565 U.S. 400, 413 (2012).

Notably, although § 2703(c) makes reference to "a warrant issued using the procedures described in [Rule 41]," part (d) of § 2703 states that "a court order for disclosure under subsection . . . (c) may be issued by any court that is a court of competent jurisdiction" upon a showing by the government based on "specific and articulable facts" that "the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." See 18 U.S.C. § 2703(d). This is *not* the standard required by Rule 41, which is "probable cause." Thus, if one reads § 2703 as authorizing prospective PLI cell phone data, such surveillance would be available to the government on a showing far less than probable cause—mere relevance to a criminal investigation would be enough. This is contrary to the Supreme Court's holding in Jones.

The Supreme Court held in Carpenter v. United States, ___ U.S. ___, 138 S. Ct. 2206, 2223 (2018), that obtaining a customer's *historical* PLI from a cell phone constituted a search which must comply with the Fourth Amendment warrant and probable cause requirements. The Court did not address prospective PLI, but it noted historical cell phone location data "partakes of many of the qualities of the GPS monitoring we considered in Jones." Id. at 2216. "Much like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled." Id.

The Carpenter Court noted a special solicitude toward location information emanating from cell phones. Id. at 2220. Cell phones are " 'such a pervasive and insistent part of daily life' that carrying one is indispensable to

12

participation in modern society." Id. Therefore, one cannot really characterize as "voluntary" one's transmission of PLI through one's phone—phones are necessary for commerce, socializing, and any number of other activities. Id. Coupled with the nearly involuntary mandate that people carry cell phones is the fact that most cell phone carriers maintain data for a period of five years. Id. That means that everyone in the nation, before they have ever become a suspect, have accessible five years' worth of information about their detailed and discrete movements available to the government at the click of a button. Id.

Finally, numerous lower courts have analyzed this issue for years. Almost all have concluded that prospective PLI from a cell phone constitutes a tracking device. See In re Application of the U.S.A. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Phone, 849 F. Supp. 2d 526, 575-78 (D. Md. 2011) (collecting cases).

The upshot of the conclusion that the government's application is for a tracking device is that the government would have to comply with § 3117 and with Rule 41. Both require that the tracking device warrant be issued by a court in the jurisdiction where the tracking device is first made operable. See 18 U.S.C. § 3117; FED. R. CRIM. P. 41(b)(4). Here, because the government's affidavit in support of its request for a warrant indicates the TT and its owner are in Iowa, the government cannot comply with § 3117 and Rule 41, which both require that tracking device warrants be issued in the district where the tracking device is at the time of its inception. Because the TT is not in the

District of South Dakota, but rather in Iowa, this court concludes Rule 41 and § 3117 require the government to apply for its warrant before a federal magistrate judge in Iowa. But for the district court's earlier decision, this court would reject the search warrant application on that basis.

### C.  Authorities Submitted by the Government

In the prior case before this court, the government relied on case law from the Seventh and First Circuits holding that Rule 41(b) did not apply to § 2703, despite the fact that § 2703 specifically references Rule 41. See 4:19-mj-00063 at Docket No. 4 (citing United States v. Ackies, 918 F.3d 190, 194 (1st Cir. 2019); United States v. Berkos, 543 F.3d 392, 394-95 (7th Cir. 2008)). This same case law was also adopted by the district court in overruling this court's prior evaluation of the first PLI search warrant sought. See 4:19-mj-00063 at Docket No. 6.

In Ackies, the First Circuit affirmed the district court's denial of defendant Ackies' motion to suppress the evidence obtained from a prospective PLI cell phone warrant issued pursuant to 18 U.S.C. § 2703(a) and (c)(1)(A) for a cell phone that was never demonstrated to have entered the district of the issuing magistrate judge. Ackies, 918 F.3d at 194. Ackies argued the prospective PLI cell phone warrant was really a tracking device which did not comport with 18 U.S.C. § 3117 and violated the jurisdictional limitation of Rule 41(b). Id. at 197.

The First Circuit rejected these arguments. First, it held that prospective PLI gleaned from a cell phone was not a "tracking device" and that the Supreme

14

Court had not so held in Carpenter. The First Circuit emphasized that the statute governing tracking devices, 18 U.S.C. § 3117, spoke of "installation" of the "device," as did Rule 41(f)(2). Ackies, 918 F.3d at 198-99. Here, the court noted, there was no physical "device" which law enforcement would be "installing." Id. Therefore, the court reasoned, the PLI warrant could not be a "tracking device." The Ackies court did not acknowledge that the tracking device statute, § 3117, was passed in 1986 and never amended—and that this was well before the advent of today's smart phones.

This court finds this argument by the Ackies court unpersuasive for another reason. Rule 41 speaks of "*any* installation" of a device that might be required. FED. R. CIV. P. 41(e)(2)(C). This clearly indicates that the drafters of Rule 41 contemplated that there may be tracking devices where no installation is required—such as a warrant for prospective PLI from a cell phone. Furthermore, although seizing on the word "installation," the Ackies court tried to distinguish § 3117, the court failed to acknowledge the highly probative definition of "tracking device" in that statute or the fact that Rule 41(e)(2)(C)'s language clearly indicated it applied in cases where there may not be "any" installation. Otherwise, Rule 41 would read: "*all* installation[s] . . ."

The Ackies court also held Rule 41(b) simply had no application to search warrants sought under 18 U.S.C. § 2703 because § 2703 incorporated only the Rules' "procedures" while Rule 41(b) was characterized by the court as a "substantive" provision. Ackies, 918 F.3d at 200. In order to issue a warrant under § 2703, the Ackies court asserted, the court need only be a "court of

15

competent jurisdiction" which is defined as any "district court of the United States (including a magistrate judge of such a court) that . . . has jurisdiction over the offense being investigated." Id. (citing 18 U.S.C. § 2711(3)(A)(i)). And, although § 2703 states that warrants issued under that provision must be "issued using the procedures described in the Federal Rules of Criminal Procedure," the court held that "procedures" did not include the geographical limitation contained in Rule 41(b). Id. at 201-03. The Ackies court cited a factually inapposite case from the Seventh Circuit in support of this proposition. Id. (citing United States v. Berkos, 543 F.3d 392, 394-95 (7th Cir. 2008)).

Again, this court finds this construct unpersuasive. Federal law has long held that rules establishing venue—i.e. where an action can permissibly be filed—are rules of "procedure." Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); and Hanna v. Plumer, 380 U.S. 460 (1965). Under that line of cases, it has long been established that rules designating venue are procedural, not substantive. See American Dredging Co. v. Miller, 510 U.S. 443, 453-54 (1994) (stating that "venue is a matter that goes to process rather than substantive rights"). Rule 41(b) is a rule of venue—it merely tells the government where it may file its application for a warrant. Given this long history of solidly established law that rules of venue are procedural, Congress' reference to the "procedures" under Rule 41 would have encompassed the venue provision in Rule 41(b) as part of that "procedure." Sekhar v. United States, 570 U.S. 729, 733 (2013) (where Congress uses a term that has accumulated meaning over

16

many years of use, it presumably knows and adopts that meaning when it uses that word in a statute and this should inform the court's construction of the word in the statute); Beck v. Prupis, 529 U.S. 494, 500-01 (2000) (when Congress uses words with a settled meaning at common law, Congress is presumed to adopt that meaning when using those words in a statute; courts should assume that ordinary meaning unless there is a contrary intention expressed).

Finally, the Ackies court gave its blessing to the PLI warrants under the Leon[8] good faith exception to the warrant requirement. Id. at 203. Of course, the Leon good faith exception to suppression is a *post hoc* rationale for not suppressing evidence once a search warrant has later been found to lack probable cause. The Leon doctrine has no application whatsoever to the analysis of whether to issue a search warrant in the first instance, which is the question before this court.

The weakest link in the reasoning of the Ackies court, however, lies in its analysis of whether § 2703 is applicable in the first instance. It conducted only the most facile and surface-level analysis by asserting the issuing magistrate judge was "any . . . court . . . that has jurisdiction over the offense being investigated." Id. at 200. It further reasoned that the information was being requested from an "electronic communication service" provider regarding information pertinent to its "subscriber or customer." Id. The Ackies court failed to mention any of the above analysis regarding § 2703—namely, that the

---

[8] United States v. Leon, 468 U.S. 897 (1984).

statute is strictly retrospective in what it affirmatively covers (historical data stored for greater or lesser than 180 days), it never affirmatively allows the government to obtain prospective location information anywhere in the text, it specifically *excludes* from its ambit any signaling information from a tracking device, and it omits the hallmarks of every other type of prospective electronic surveillance ever authorized by Congress (time limits and judicial oversight).

Finally, this court notes that the Ackies and Berkos decisions are not in this court's circuit. As such, they are not binding authority. The closest case decided in the Eighth Circuit is United States v. Turner, 781 F.3d 374 (8th Cir. 2015), wherein the court assumed for purposes of the appeal—but did not hold--that a PLI search warrant was a tracking device. Based on all of the above analysis, the court makes the following conclusions.

## CONCLUSION

1. The application for prospective PLI from the TT in this case is supported by probable cause to believe it will yield evidence that will make it more or less likely to believe the possessor of the TT has violated 21 U.S.C. §§ 841 and 846.

2. The court concludes such application, however, is governed by 18 U.S.C. § 3117 and FED. R. CRIM. P. 41(b), requiring that the application demonstrate the TT is present in the District of South Dakota at the inception of the tracking activity.

3. Because the district court in 4:19-mj-00063 has decided the government may obtain prospective PLI data from a cell phone under 18 U.S.C.

§ 2703(c)(1)(A) without regard to the geographic location of the cell phone at the time the warrant is issued, this court feels duty-bound to follow that binding district precedent and issue the requested search warrant in this case, but does so with the above-described reservations.

Dated March 9, 2020, *nunc pro tunc* March 6, 2020.

BY THE COURT:

*[signature]*

VERONICA L. DUFFY
United States Magistrate Judge